All right. Thank you. We'll call the case of In Re Nuverra Environmental Solutions. And Mr. Pierce, you're up first, sir. Are you reserving any time for rebuttal? I'd like to reserve two minutes, Your Honor. Two minutes. Done. Thanks. Thank you. Good afternoon, Your Honors. May it please the Court, Clay Pierce, on behalf of Appellant David Hargraves. The bankruptcy court in this matter held that debtors reorganization plan did not unfairly discriminate against Nuverra's unsecured bond holders, even though the plan paid the unsecured bond holders four to six cents on the dollar and paid all other unsecured creditors, including litigation claims, trade claims, and intercompany claims, 100 cents on the dollar. We contend that that was error for at least three reasons. Reason number one. Well, before you get into your reasons, because we've read your please speak directly to the question of equitable mootness. And in particular, if you would, speak to the capacity for the kind of relief that you've asked for to be given in light of the bankruptcy code. That is, for the A6 creditors to keep getting six cents on the dollar, but your client to get 100 cents on the dollar. Sure. When we were below, Your Honor, and we were in the bankruptcy court, we did the only thing that we could procedurally do, which was to object to confirmation of the plan and ask the court not to confirm it. When we lost that fight, we filed for a stay, and the district court denied the stay. And we got into the district court, then the equitable mootness argument was raised. I expect that Mr. Sosnick is going to tell you that because the plan's been confirmed, and because securities were issued, and because money has been paid out, we should not issue any more securities, and we shouldn't discourage any of that value. But under this court's decision in Tribune, I believe it was Judge Ambrose who wrote that a court may fashion whatever practicable instead of declaring it consistent with 23A4. Can the kind of relief you're asking for even be given? Is it possible to pick one person out of the class and say, you get 100 cents on the dollar, everybody else gets six? The answer to your question is yes, and here's why. Number one, you aren't picking. Each of the claimants who are in the class when they decided not to object waived their rights, and that matters. In the Semkrude case, this court decided that it was going to let one litigation plaintiff go forward and assert their adversary proceeding while all others could not, and the reason that the court was comfortable doing that was because everyone who did not signed on to a settlement. That's ultimately what happened here. These all parties signed on to a settlement, and those who didn't sign on to the settlement in our class decided not to object to the plan. They had appellate rights, they waived their appellate rights. So, and we can- Is that a waived argument, or in our case, they agreed or consented for purposes of Cramdown? I'm having a hard time hearing you, Judge Krause. I'm sorry. Can I just ask my colleague to repeat? Sure. Is the argument that for purposes of the Cramdown that they were consenting or agreeing, or is it truly a waiver argument that you're making? We're making a waiver argument, Your Honor. They had the right to object to Cramdown, and they ultimately decided not to. We, however, did, and the other side has placed great reliance, obviously, on Section 1123. We don't think it applies. 1123 is an issue when you actually have the plan in front of you, and you're deciding whether or not to approve. This plan unquestionably afforded the same relief to everyone who was in our class, but now we're in court asking for, the other side is saying, well, you've gone too far at this point. You can't do anything about that. Obviously, there's been a discussion within the Third Circuit about whether or not equitable mootness is a good thing or a bad thing. We've read Judge Krause's concurrence in one-to-one, and we read Judge Ambrose's reply in Tribune, but what is clear is that equitable mootness is supposed to preclude appeal only when it absolutely has to, and in this instance, you have the ability to be able to afford us relief, and 1123 applies to the judge's decision to approve the plan. It doesn't restrict this court in fashioning interim relief where full relief isn't available. That's our argument on that. What's the practical effect? I'm sorry. Go ahead, Judge. If the nature of the claim is unfair discrimination, that is a class-based claim, and the remedy that you are asking for is not one that correlates to a class-based claim, how could we go beyond that? You could have asked, for example, for something more than four to six cents on the dollar for everyone who was in the class that not required unwinding. I understand that there were only 171 or so individuals in the class. That's right. That's right. What we asked for at the district court was for the lower court's opinion to be reversed. The district court said, I can't do that because the plan's gone too far. It is only at that point where we start talking about individual relief to Mr. Hargreaves. The other side has placed a lot of emphasis on the idea that somehow we're trying to get a windfall or we're trying to get something that everybody else wouldn't get. We're fine with you sending the case back down to the bankruptcy court and putting the company back into bankruptcy, but we've been told again and again that that's impracticable. If you accept that that is true, then 1123 doesn't bind you anymore and you have the ability to fashion interim relief. All the unsecured creditors in this case, except for the unsecured bond got to ride through. Their claims were unimpaired by the bankruptcy. If you did that for us, you would be treating us the same as them, curing the unfair discrimination issue. None of the other members of our class are going to complain about that because they didn't object and they didn't preserve their appeal rights. What is the practical effect of what you're asking for, isn't it, going forward to say to individual objectors, look, you can not ask for individualized relief at the confirmation stage. You can wait until things go through. You can wait until even you have to admit that there's substantial consummation, and then you can come in and say, hey, this isn't moot. Give me 100 cents on the dollar. The practical effect of that, is it not to incent people to do precisely what Mr Hargreaves is doing and create a lot of after the fact efforts to separate oneself from a class structure that was approved at the bankruptcy level? Your Honor, I'm going to respectfully disagree on the following grounds. It costs money to pursue an appeal. It costs money to pursue this appeal. We are the only objector who decided to do this. I think the idea that holdouts, because what we're really talking about here is the holdout problem, is going to become a big deal because of your ruling in this case is false because why are we going to invest the money if we don't actually have a meritorious objection to the plan that was confirmed? This plan paid one set of unsecured Well, when you say, look, you're going into your unfair discrimination point, and I'm not there. I'm talking with you about equitable mootness. The argument about unfair discrimination, we can have that discussion if you want, but of course, we've got bankruptcy findings. We've got a bankruptcy court saying, I find that this is important for A7 to get 100 cents on the dollar because otherwise they're not going to be able to have a reorganization with these trade creditors and the insured litigation pieces. It's not as if there was not an argument to be made on the other side. It was made and accepted by the bankruptcy court, but leaving that to the side for a minute and focusing just on equitable mootness, the holdout problem, when you say, why would we have an incentive? The incentive is for people going forward to say, we'll take our shot. They'll settle up with us. Isn't there a real incentive if you get individualized relief after a plan has been substantially consummated? Well, Your Honor, I guess I'm going to go back to the point I made before. Look at this case. It's not like there are a lot of us. There's only one of us. If you take a look at this, the reason that we have the ability to bring this appeal is because 45 of our class members decided to decline, and only $3 million that voted within our class said, we approve, and 4 million said, we don't. So the class-based structure- There's nothing new in the claim that you're raising, right? No. No. This is the claim that you've been making all along as to a merits claim. That's right. It's the same claim that we've been asserting all along. The only reason we're talking about individual relief is because the other side said, regardless of the merits of your appeal, we've gone so far here that there should be no way out for you. We can't hear you anymore. I think that's a problem, and I think that's the reason why- To be clear, you've been asking for, all along, 100% of relief for all of the class members, your clients included, right? That's exactly right, and in fact, under the Bankruptcy Court's plan, they allowed our claim to the tune of 100%, but then they impaired us pursuant to the provisions of the plan. There's nothing new about us saying that we want 100 cents a dollar- Could you have asked for individual relief in the Bankruptcy Court? Could you have said- All you can ... As I understand it, the choice that the bankruptcy judge had was, I'm going to approve this plan or I'm not going to approve this plan. That's it. Go ahead and ask him to say- 1123A4 says you can't ask for that, right? That's right. I mean, you couldn't have asked for it. No. I guess the point I want to make here, Judge Jordan, is that we did everything that we're supposed to do, and using a prudential, non-statute-based doctrine to preclude our ability to get our claim reviewed on appeal, that's pretty tough. But your answer to Judge Jordan is you couldn't have asked for it in connection with the plan confirmation process, but I think what we're trying to get at is that then, if that's so, how can you be asking for it now? We're relying on the fact that under Semcrude and under Tribune, two decisions from this court, the court has been willing to fashion interim relief where full relief isn't available. What was the answer in Semcrude? We had a litigation claimant in Semcrude. He was a member of a class. He was allowed to go forward with his claim when everyone else in his class wasn't. Okay, there's the discrepancy we're talking about, but the court decided to let it happen anyway because, given that equitable mootness is only supposed to apply when havoc is going to be wreaked, then we should find a way to give relief to this individual creditor. Here, we always said that we wanted 100 cents on the dollar, and at this point, we're asking for the ability to be paid, just like every other unsecured creditor who got paid 100 cents. Let's say we agree with you, and we get past equitable mootness. We're looking at merits. The practice of horizontal gifting is a common practice. What's the basis for saying that it has an effect, as it will typically do, of favoring some creditors above others, that that is making it unlawful as a practice? Isn't there a difference between the treatment of vertical gifting and the nature of the absolute priority rule adjective versus what we have here with horizontal gifting and the unfair discrimination claim? Yeah, my answer to that question, Judge Krauss, is an emphatic no, and here's why. Number one, there is nothing, nothing in the statute that blesses the idea of gifting that says gifting is somehow an exception to 1129b or says that gifting should play any role in the analysis at all. A lot of the arguments that the other side has made were made in the arms. Are you suggesting, are you suggesting that that's, it's unlawful? I, I'm suggesting that it's contrary to the provisions of the code, and that you should reject it on that basis, the same way that you decided not to allow gifting in the vertical context in Armstrong. The rule doesn't allow for it, and if you decide to allow for a horizontal gifting, you'd be effectively rewriting the code in a way that the Supreme Court these days is saying it's not a very good idea. It's also, we're calling some of the questions. Is it common practice, is it common practice now, Mr. Pierce? Uh, it's controversial. Um, the con, the cases that the other side asked for are cited in Genesis, um, which obviously is highly disputing case. We cite another case called Century where they don't allow for it. Is it possible that horizontal gifting is happening, um, in cases that don't end up getting appealed to the Third Circuit? Sure it is, but vertical gifting is happening. Are they correct, are they correct on the other side in saying that Armstrong, uh, blessed Genesis health and said that's fine? No, no, that's, that's, that's absolutely not right. What happened in Armstrong was, uh, Judge Rebrano was given Genesis and said, look, gifting's fine. See, they gifted in Genesis, and Judge Rebrano said, look, the facts here aren't the same. And even if the facts were the same, it's, if the facts were the same, it's wrongly decided. And then the Third Circuit adopted that reasoning. The case that we rely on the most is from the Southern District of Tents, uh, Southern District of Tex, Texas, excuse me, Century. That was cited with approval by Judge Rebrano in the lower court Armstrong decision. And when the Third Circuit adopted, uh, his reasoning, he adopted that. He adopted the, the, uh, his approval of the Century case. I, I, you know, it's, it's arguably fuzzy, which is the reason why, um, I expect the other side will tell you that actually Armstrong did bless it. But if you take, if you take an honest look at these cases, there is nothing in there saying we think horizontal gifting is fine. That didn't happen. I haven't seen a single appellate case which says that horizontal gifting is okay. If you allow... Vertical gifting may have been common too, but the Supreme Court has, has, uh, had expressed its own view on that. And perhaps it's, perhaps it's the case, uh, here that, uh, uh, DeVera wants us to, um, reach the question of horizontal gifting. And, uh, we absolutely do. Right. And I, I understand that this court needs to follow the law and follow statutes and not follow law professors. Um, but I would be remiss if I did not note that in Genesis, in Tribune, and in the lower court case here, everyone followed, uh, Professor Bruce Markell's analysis for how to deal with gifting. The district court, when it decided that it was going to, uh, that gifting was okay because of rebutted unfairness, he made the point that, well, we, you know, Markell didn't deal with gifting. We've now heard from Professor Markell, and he obviously doesn't bind you, but he makes a persuasive case. Equality of, of, uh, recovery amongst similarly situated creditors has been a bedrock principle of the bankruptcy code for over 100 years, over 100 years. Okay. All right. Well, we've got your argument, uh, and we appreciate it. Mr. Pierce, you'll have an opportunity on rebuttal. You've reserved two minutes. Mr. Sosnick, we'll turn to you now for the, uh, case on behalf of the reorganized debtors. Thank you, Your Honor. So, I guess, um, I would start, um, I think, where the court left off because it was on equitable mootness. I think the, the key for us from our perspective is not only, um, under the applicable law that was in existence at the time that this was decided, but since, um, since our case, um, was briefed, actually, uh, the court has, has come down with this Millennium decision, which I, I think, um, Judge Jordan and Judge Restrepo, you were both part of that panel, and Judge Remy wrote, and I think what, what we're seeing is a very similar situation to what occurred in Millennium. Um. Well, how, how, good. Yeah. Tell me how this is similar to Millennium. Well, I think, leaving aside the, the merits part of this and, and the, the 11, um, 1123A discussion, a poor discussion that we, we, we had, and I'd, I'd like to come back to, um, the fact is the relief here would completely scramble the, the plan. There was an intricate set of. Oh, how would given, how would giving 450,000 bucks to this guy completely scramble the plan? Because. I understand Mr. Pierce's pitch to be, look, anybody could have come in here and appealed this, so you're not, we're not doing something, uh, that's unfair to if, and we couldn't have, we, because of 1123A4, we could not have asked for his individualized relief in the Bankruptcy Court of Confirmation. We tried to get a stay, we couldn't get a stay, and it's just fundamentally wrong to leave us without a remedy, and that's what you're doing here. Now, we can argue back and forth whether that's a, a good argument or not, but that's the argument he's putting to us. You explain to us why that's wrong. How, how is it right to be in a situation where you cannot, because of the code, ask for individualized relief, and then be told when you come up on appeal, oh, you can't do that, you can't ask for individualized relief? Because I, I think, Your Honor, it, it's actually in the case law, because I think when, when the court looked at cases, um, SEMCRUD, for example, where it looked at, at the example and said, okay, in that situation, we're talking about the allowance of claims and, and the individual rights of the claim holder. That is their individual right relative to proving that they can be a participant in the plan, and how they participate in the plan, and what they ultimately recover. And the court, this court, in that instance said, that is an acceptable, um, thing to have preserved on, on appeal. This, because of 1123A4, I mean, it's exact, it goes in a circle, Your Honor, because the fact that they couldn't ask for it below is not relief that you can fashion here, because what it would be saying to everyone is, okay, just ignore the code. Everyone who, who not, not just dissents, because there were 4.5 million dollars, actually, I think 4.9 million dollars worth of claims have dissented in that class. Not just that you didn't dissent, but that you didn't ultimately take the appeal. So every one of those other holders who's now sitting with the claim, who also voted no to the plan, is in a position where just because they didn't vote no, they're now out of luck. So with this particular, Why isn't that exactly what should happen, where someone thinks they have a meritorious claim, they want it adjudicated on the merits, and they ask for the relief that is permissible, they assert the claim, they ask for the relief that's permissible, which includes 100% recovery for themselves and everybody else. But if it moves past that, and the others are prepared to accept the confirmation of the plan without objection, why isn't that simply a waiver issue? It's the claim that's being pursued, and he's taken the steps that we said ought to be taken in terms of seeking a stay and acting promptly. So why at that point should we assume that there's no possible remedy that's available that would not unscramble the plan? Because I think, Your Honor, that is the fundamental premise behind 1123-A-4. And 1123-A-4 talks about equality of treatment unless a holder decides and agrees not to accept the same treatment. Here- Right, but he's raised a waiver argument that could be interpreted even looking retroactively as agreement to accept the plan by not objecting. Why shouldn't we look to, at the point where you have raised an equitable mootness defense, to consider the fashioning of some relief so that bankruptcy law can develop, and where there are claims that may or may not be meritorious, at least they get adjudicated on the merits? I mean, the simple answer, Your Honor, to me is that a waiver is not the same thing as an agreement. And that, I think, is a matter of just statutory interpretation under 1123-A-4. So I don't think the fact that, just with all due respect, starting from the premise, I have a hard time with the premise that the waiver would be the same thing as an affirmative agreement. And so that, I think, is- Can I ask you, I want to make sure I understand your position, Mr. Sosnick. I understand Mr. Pierce to be arguing that the fact that he couldn't argue in the bankruptcy court for individualized relief doesn't prevent him from being able to ask for individualized relief on appeal, because 1123-A-4 only would bind him at the confirmation stage. He's free to come in, Mr. Hargreaves is free to come in after the fact and ask for individualized relief. Am I understanding you correctly to say, no, the whole point of 1123-A-4 is to not allow for individualized relief? Or am I- explain to me, I'm trying to get both sides here. And I'm sure Mr. Pierce will correct me if I've misunderstood what he's saying, but I want to make sure I understand what you're saying. Are you saying that the statute, 1123-A-4, it sticks. You don't get to ask for individualized relief. You're done. Or am I misunderstanding you? That is correct. That is our view, Your Honor. And I think that was the view of the district court below on the first level of this appeal. And the reason for that is that you, we just, I think fundamentally fashioning relief is one thing. Fashioning relief that violates another provision of the code is just something that we don't think can be done. And I think just to come back to the prior, again, the predicate to the to the question was, he couldn't raise it below. The reason he couldn't raise it below was not a procedural issue. It wasn't something, some error by the court. It's because the bankruptcy court, bankruptcy code says you cannot have individualized treatment. And so that's what prohibited him from raising that below. It wasn't, like I said, something external to what was going on. It was the bankruptcy code itself. So it seems that then being able to ask for that in terms of what he's looking for relief is just something that this court can't do because the court can't make up a relief that violates another provision of statute. But what's the route forward? I'm sorry. I'm just asking, what's the route forward then for somebody like Mr. Pierce's client? Is there a route forward? Is the answer you can ask for a stay and if it's sufficiently meritorious, you'll get it. And if you don't get it, given 11-23-84, you're out of luck. I think it is, on this particular appeal. In other situations, it wouldn't be. And I think, again... Why not? Thank you. That's exactly what I'm trying to get you to speak to. I think you're hearing a concern that you should speak to about, are we doing something systemically that is unfair to the Mr. Hargreaves of the world? Or is there a way for people who feel that they've been unfairly discriminated against in the claims administration process to have their positions heard on the merits? And I think, Your Honor, the answer to that is, in this instance, that is exactly the case, that this is a situation where it can't be raised. And I think this court has answered that recently in the Tribune 3, I guess, decision, but in September Tribune decision by saying that the way you look at unfair discrimination is not for a particular creditor. You need a class to have dissented. And so it's a class... That's certainly true. And that's what we said in Tribune 2, but that goes to the merits of the debtor's own making, if you can move forward quickly with confirmation and then raise equitable moodness so that at that point, even if the only relief that is available that would not unwind the plan involves individualized relief of the one person who did not fail to object, that they still can't move forward. I mean, that seems rather circular. Well, I don't know that it's circular, Your Honor, because I guess what I'm saying is the case law talks about this being a class issue. So the question that was asked is, is this a situation where, in particular, that equitable moodness may arise and bar this claim? And to me, the answer is when you marry those two together, yes. And if we answered the question that we always should have an ability to remedy every harm, then there would be no equitable moodness. And the reason equitable moodness exists, as I know this Court is aware, is it exists because there were a set of agreements that were reached underneath. And again, not to get into too far into the merits on the gifting point or like, but there was an intricate plan here where secured creditors gave up their right to receive recovery in order to provide Mr. Hargreeves and the other bondholders a recovery. It wasn't the one that they wanted, and to give a recovery to the trade creditors. And so to unwind this at this point, yeah, is unwinding that intricate set of agreements on the basis of the claim that- But it's not just a matter of individual relief, right? I mean, you agree that if it is individual relief to him as the one remaining litigant in this case, that would not unwind the plan. I don't agree with that, Your Honor, because I don't know how you would do that. I mean, and just said, if we gave him a check for $450,000, would that undo the plan? I guess not, but I don't know under what structure we'd be giving him $450,000. There's no structure to allow that. And that may be unfortunate for Mr. Hargreeves in this situation, but that is it. In other situations, that's not the case. And that's what the case law distinguishes between those situations. Say we move past equitable mootness and we do reach the merits. Can you tell us why it should be permissible here for members of the same class to be treated at such extremes, 100% versus 4 to 6 cents? Well, they weren't of the same class. They're of the same ranking. And so I take that as a question, but they were specifically put in different classes because they have different characteristics. And the record, I think the factual record is clear on this, that they had distinct characteristics, that the trade was a go business. I know that Mr. Hargreeves has raised at several different points, the existence of litigation claims. The record I think on that is pretty clear that although there were litigation, there are litigation that's part of the, because there was no way to dissect between some trade claims that arose from the business and others. There were some litigation, but none of those were claims that were thought to have validity. Either they were claims where the testimony was that the New Era had counterclaims that they thought were valuable. So it was more of an asset than liability, or they were claims that are covered by insurance. So when you take that out, these were all, these are all part of the business. And the court found below that that was a valid basis to separate those claims and a valid basis to give this disparate treatment here, which again was all coming from someone else's recovery. It wasn't coming from Mr. Hargreeves' recovery. Do you agree that horizontal gifting is subject to the prohibition on unfair discrimination? I don't agree with that. And I think again, the mixing of the case law on absolute priority rule cases, where we're talking about vertical versus horizontal, we think is a significant distinction. And again, we think the significance of that distinction arises from the statute itself. When we talk about vertical gifting, it's a violation of what has long been described as, or the common nomenclature is the absolute priority rule. It's not technically written that way, but for decades, well before the enactment of the bankruptcy code, it's been absolute priority rule. And so the understanding is it's absolute. There's no discretion in the class. Unfair discrimination by its nature, the word unfair requires a comparative analysis. In some situations, it can be done. In some situations, it can't be done. So we think that horizontal gifting, there's no prohibition in the code against horizontal gifting. There is, and the courts have found, including this court, that vertical gifting is just a different statute. But to the extent that the concern that was animated in the Supreme Court in Javik went to this sort of perverse incentive that can then be fed through these sorts of preferential gifts, don't we have that concern just as much with horizontal gifting, rather than treating like-situated creditors equally, that there will be skipping over for purposes of preference to certain insiders or for various different reasons? But that it takes it outside of the bankruptcy code itself. I don't think so, Your Honor, because again, I think that vertical gifting, when we're talking about the absolute priority rule, is a recovery in the end of the day to insiders to equity, and that's the concern. Here we're talking about recovery to creditors, and this group of senior creditors provided a recovery to all junior creditors. What they thought was important to the business going forward was to have the trade and business claims paid in full, because they were supporting the business, and the record is clear that these were in rural areas. These are by and large tiny claims, although it adds up in the aggregate. They're very small claims because the business is conducted in very rural areas throughout the country. And so that business, there was a choice made. There's no allegation whatsoever that this is favoring an insider. Mr. Hargreeve never made that allegation. There was nothing even close to that. And so I think, Your Honor, yes, there is a distinction between the two concerns. Well, the one witness you had at the confirmation hearing, the CRO, hadn't actually spoken with the trade creditors that this was even necessary to do in treating them so generously, you know, in contrast to others. And you stated at the confirmation hearing that the real reason for the separate classification was a separate treatment that was going to be given. I mean, that begs the question in terms of distinctions being made for sound reasons. If it's enough to say we've already decided to treat them differently, how then could there be policing of appropriate reasons for that differential treatment? Well, again, Your Honor, I think what's happening is an arc to this, to the way this plan evolved. And it was a prepackaged plan that was negotiated ahead of time with creditors. And so by the time we had actually sat down and put something to paper, the decision was made to support the trade and business creditors. So then by definition, for the same reason we just talked about with respect to Mr. Hargreaves and his claim under 1123.84, you have to come to the same conclusion that we had to separately classify the trade and business claimants. So the decision was made to pay them in full, and then you had to separately classify them because you couldn't have them in the same class. It would run exact same problem under 1123. And I think the case law, including in this circuit, in the Jersey City Medical Center case, it recognizes that classification to allow for different treatment is absolutely acceptable. And that's what has to get done in order for it plans to get confirmed and to get negotiated in a way that makes sense. So yeah, I think that is, although we did come to that conclusion, it was in the context of the broader plan, and we had to separately classify. Thank you. Judge Krause or Judge Restrepo, anything further? No. Okay. Well, thank you, Mr. Sosnick. Mr. Pierce, you've got two minutes for rebuttal, sir. Thank you, Your Honor. I'll try to be quick. Point number one, I explained before our view that Section 1124 shouldn't apply within this context. And in closing that point, I want to emphasize that Simcrude could not have been decided the way that it was if you applied the 1124 argument that the other side is making here. Point number two, 1123A4. I'm sorry, 1123A4. I misspoke, Your Honor. Okay. You know, I just want to, I don't know the code the way you guys do, so I didn't want to make sure there wasn't some other section in there I needed to be thinking about. Okay, go ahead. Understood. I heard Mr. Sosnick say that there's no mechanism to pay us. That's wrong. The trade claim... Who would pay you, right? I mean, the District Court made a point of saying, look, if they want to get paid, who's going to pay them? There's... The reorganized debtors. The debtors are gone? The reorganized debtors? They're the ones responsible to pay you? Right. It's the reorganized debtors that are paying trade claims. It's the reorganized debtors that are paying litigation claims. Those claims rode through bankruptcy. They are unimpaired. The debtor, the reorganized debtor can't use the bankruptcy as a basis to contest the claim. That's the treatment we're asking for. And if you broke down the class wall between us individually and A7, which is where all the other unsecure creditors are, that's the relief that you could provide. But... Wait, and to do that, though, we would have to say, wouldn't we? We'd have to go in and we'd have to second guess the bankruptcy court and we would have to overturn the bankruptcy court's finding of fact that the classification was necessary for the day-to-day operation of the... And the successful reorganization of the business. And then we would have to say that you... You know I'm talking about your client, Mr. Spears. Mr. Hargreaves, who was unquestionably out of the money, as bankruptcy court emphasized and the district court emphasized, entitled to because you waited and, to use the term you did, you held out. Now, under those circumstances, doesn't that make it manifestly more difficult for a prepackaged plan to go through if a reorganizing debtor says, I don't know what I'm going to be finished with at the end of the day. I'm... I don't know what I should be doing at the end of the day because I don't know that I'm going to actually be done because I could have these people coming forward, even though 1123-84 says you do not get to do this on an individualized basis. They're going to come in individually and say, oh yes, I can because that only applies at the confirmation stage. Look at what the Third Circuit did in Nuvera. If... How do we address that? You wouldn't have to because if they had had lots and lots of objections, which you need in order for people to be asking for individualized relief, they would have gone and they would have renegotiated the plan. Yeah, but you're missing... Maybe I'm not being clear, but your point, Mr. Pierce, is not forward-looking. I'm trying to look down the road. If we do what you're saying, then it won't be just one guy. It'll be a whole bunch of guys saying, did you see what Hargreaves got? 100% on the... Like every penny, we're doing it. We're doing the same thing. Right, and the way that the debtors... The way that future debtors can avoid that problem is by not unfairly discriminating. That's what opened the door to all of us and... Yeah, when you say not unfairly discriminating, that sort of puts a rabbit back in the hat because the bankruptcy court said, it's not unfair discrimination. You are out of the money and you're... And there's a sense to this discrimination that I'm doing. If I may address that specific... Can I address that specific point, Your Honor, about the factual finding? If you go back and you read the opinion, the very first thing that the bankruptcy court said, and the very first thing that the district court said was, this isn't unfair because you're out of the money. They didn't approve this because of trade claims. If trade claims was the only argument... No, no, no. They did... I can read it to you. When you say, go back and read it, I read it just before this argument. The bankruptcy court said, look, this prepack wasn't going to work. I'm just paraphrasing, but it wasn't going to happen unless these day-to-day operations were able to go forward and they needed these relationships to go forward. Doesn't that strike you as a finding of fact? I believe that that was an application of the law to undisputed facts. And I mean, for the record, we agree with some of the points that I heard Judge Krause making about the fact that the record on trade is thin. They didn't make a motion saying that there were any creditors they absolutely needed. They actually didn't even talk to any creditors. It was just the speculative testimony of the CRO. But to be clear, we're talking now about merits, right? So if we conclude that the claim is not equitably moot, then we get to reviewing the merits of the district court's determination about whether or not this was uncharted territory in terms of horizontal gifting and its permissibility post-JACC. That's honestly, yes. And that's, I believe, why we need desperately need your input on this. The problem with horizontal gifting is that they're taking away the bargaining power that Section 1129B gives to unsecured creditors, including creditors that are out of the money. There are lots of rules that protect creditors out of the money. The idea that they could as much as they want to, just because we're out of the money, that's a non-starter. It's been well and truly argued thoroughly in the papers and here today. I'm going to ask, if I can, for Mr. Sosnick and Mr. Pierce to stand the line and Mr. Cain, if you would go ahead and terminate the live stream because the court has just a sort of a sidebar. If we were in the courtroom together, we would just call you up the sidebar, but we don't get to do that. So we're going to do it metaphorically by asking you to stay on the line and having Mr. Cain, if he would, recess court and terminate the live stream.